UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

VINCENT CLEMENT, on behalf of himself and
all others similarly situated,

                   Plaintiffs,

                   v.

EIT NYC, LLC,

                 Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Case No.:  25-1042

CLASS ACTION COMPLAINT
AND DEMAND FOR JURY TRIAL

## INTRODUCTION

1.    Plaintiff VINCENT CLEMENT ("Plaintiff") on behalf of himself and others similarly situated, asserts the following claims against Defendant EIT NYC, LLC ("Defendant") as follows.

2.    Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using the computer. Plaintiff uses the terms "blind" or "visually-impaired" as Plaintiff's central visual acuity with correction is less than or equal to 20/200.

3.    Based on a 2020 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired[1], including 2.0 million who are blind. According a 2016 report published by the National Federation of the Blind, 2016 report, approximately 418,500 visually impaired persons live in the State of New York.[2]

---

[1] *See* United States Census Bureau Report.
[2] *See* 2016 Report – National Federation for the Blind.

4.     Plaintiff brings this civil rights action against Defendant for the failure to design, construct, maintain, and operate Defendant's website, www.elementintime.com (the "Website"), to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people. Defendant's denial of full and equal access to the Website, and therefore denial of the goods and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

5.     Congress provides a clear and national mandate for the elimination of discrimination against individuals with disabilities. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York City law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

6.     Defendant's website is not equally accessible to blind and visually impaired consumers; therefore, Defendant is in violation of the ADA. Plaintiff now seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

7.     This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq*.

8.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") claims.

9.      Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize, on a number of occasions, the subject Website within this Judicial District.

10.     Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Eastern District of New York that caused injury and violated rights the ADA prescribes to Plaintiff and to other blind and other visually impaired-consumers. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District: on several separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods and services offered to the general public, on Defendant's Website in Kings County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing the Defendant's Website in the future.

11.     The United States Department of Justice Civil Rights Division has recently issued that "the Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."[3]

---

[3] *See* Guidance on Web Accessibility and the ADA.

12.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

13.     Plaintiff VINCENT CLEMENT, at all relevant times, is and was a resident of Kings County, New York.

14.     Plaintiff is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and NYCHRL.

15.     Upon information and belief, Defendant is, and at all relevant times was, doing business in this jurisdiction.

16.     Defendant's Website, and the goods and services offered thereupon, is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7)(j).

## STANDING

17.     Plaintiff VINCENT CLEMENT is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*., and NYCHRL.

18.      Consumers such as the Plaintiff may purchase Defendant's products and access other brand related content and services at the Website Defendant owns, operates, and controls.

19.     In addition to researching and purchasing Defendant's products and services, consumers may also use Defendant's Website to sign up to receive product updates, product news, and receive special promotions not available elsewhere.

20.     Plaintiff was injured when Plaintiff attempted multiple times, most recently on October 10, 2024 to access Defendant's Website from Plaintiff's home in an effort to shop for Defendant's products, but encountered barriers that denied the full and equal access to Defendant's online goods, content, and services.

21.     Specifically, Plaintiff wanted to purchase a watch "Rolex 36mm Vintage 1950's Precision UFO Steel Silver Dial".

22.     Plaintiff wished to purchase this product because he was looking for a vintage wristwatch with a classic design, durable steel case, and simple silver dial. He wanted to find a timepiece that combined precision and minimalistic look, making it suitable for both daily wear and special occasions.

23.     Plaintiff came across Defendant's Website via "Google" search. This Website hold themselves out as online store renowned for offering a wide selection of luxury watches, specializing in the sale of pre-owned and new timepieces from high-end brands like Rolex, Omega, and Patek Philippe, along with expert watch repair and authentication services. Therefore, Plaintiff desired to buy products from the Website.

24.     Unfortunately, Plaintiff was unable to complete the purchase due to the inaccessibility of Defendant's Website.

25.      Due to Defendant's failure to build the Website in a manner that is compatible with screen access programs, Plaintiff was unable to understand and properly interact with the Website, and was thus denied the benefit of purchasing the watch "Rolex 36mm Vintage 1950's Precision UFO Steel Silver Dial", that Plaintiff wished to acquire from the Website.

26.    The law requires that the Defendant reasonably accommodate Plaintiff's disabilities by removing these existing access barriers.

27.    Plaintiff has been, and in absence of an injunction, will continue to be injured by Defendant's failure to provide the online content and services in a manner that is compatible with screen-reader technology.

28.    Defendant's denial of full and equal access to and enjoyment of the goods, benefits, and services of the Website, has caused Plaintiff to suffer an injury in fact due to Plaintiff's inability to purchase a watch "Rolex 36mm Vintage 1950's Precision UFO Steel Silver Dial", which is a concrete and particularized injury, and is a direct result of Defendant's conduct.

29.    Despite this direct harm and frustration, Plaintiff intends to attempt to access the Website in the future to purchase products and services the Website offers, and more specifically a watch "Rolex 36mm Vintage 1950's Precision UFO Steel Silver Dial", if remedied.

<u>NATURE OF ACTION</u>

30.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind, and visually-impaired persons alike.

31.    In today's tech-savvy world, blind and visually impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use

to independently access the internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, and goods contained thereon.

32.     Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer. Another popular screen-reading software program available for a Windows computer is NonVisual Desktop Access "NVDA".

33.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

34.     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

35.     Non-compliant websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a.      A text equivalent for every non-text element is not provided;

b.      Title frames with text are not provided for identification and navigation;

c.      Equivalent text is not provided when using scripts;

d.      Forms with the same information and functionality as for sighted persons are not provided;

e.      Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.      Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.      If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.      Web pages do not have titles that describe the topic or purpose;

i.      The purpose of each link cannot be determined from the link text alone or from the link text and the programmatically determined link context;

j.      One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.      The default human language of each web page cannot be programmatically determined;

l.    When a component receives focus, it may initiate a change in context;

m.    Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.    Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.    In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to the specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.    Inaccessible Portable Document Format (PDF); and,

q.    The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

36.    Websites have features and content that are modified on a daily, and in some instances hourly basis and a one time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding in change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changed in a meaningful manner that will cause the website to

remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

<u>STATEMENT OF FACTS</u>

37.    Defendant is a company that owns and operates the Website, offering features which should allow all consumers to access the goods and services and by which Defendant ensures the delivery of such goods throughout the United States, including New York State.

38.    Defendant's Website offers products and services for online sale and general delivery to the public. The Website offers features which ought to allow users to browse for items, access navigation bar descriptions, inquire about pricing, and avail consumers of the ability to peruse the numerous items offered for sale.

39.    Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient NVDA screen-reader user and uses it to access the Internet. Plaintiff has visited the Website multiple times, most recently on October 10, 2024 using a screen-reader.

40.    Specifically, Plaintiff wanted to purchase a watch "Rolex 36mm Vintage 1950's Precision UFO Steel Silver Dial".

41.    Plaintiff wished to purchase this product because he was looking for a vintage wristwatch with a classic design, durable steel case, and simple silver dial. He wanted to find a timepiece that combined precision and minimalistic look, making it suitable for both daily wear and special occasions.

42.    Plaintiff came across Defendant's Website via "Google" search. This Website hold themselves out as online store renowned for offering a wide selection of luxury watches, specializing in the sale of pre-owned and new timepieces from high-end

brands like Rolex, Omega, and Patek Philippe, along with expert watch repair and authentication services. Therefore, Plaintiff desired to buy products from the Website.

43.    On October 10, 2024 Plaintiff visited Defendant's website to purchase a watch "Rolex 36mm Vintage 1950's Precision UFO Steel Silver Dial". Despite Plaintiff's efforts, however, Plaintiff was denied a shopping experience similar to that of a sighted individual due to the website's lack of a variety of features and accommodations, which effectively barred Plaintiff from having an unimpeded browsing experience.

44.    The Website contains access barriers that prevent free and full use by the Plaintiff using keyboards and screen-reading software. These barriers include but are not limited to: missing alt-text, hidden elements on web pages, incorrectly formatted lists, unannounced pop ups, unclear labels for interactive elements, and the requirement that some events be performed solely with a mouse.

45.    The Website also contained a host of broken links, which is a hyperlink to a non-existent or empty webpage. For the visually impaired this is especially paralyzing due to the inability to navigate or otherwise determine where one is on the website once a broken link is encountered. For example, upon coming across a link of interest, Plaintiff was redirected to an error page. However, the screen-reader failed to communicate that the link was broken. As a result, Plaintiff could not get back to the original search.

46.    Specifically, on the desired product page, images on the website have no alternative text. The user is unaware what the non-text content is and what information is missing.

47.    Furthermore, the carousel section found on the page does not comply with the standard accessibility requirements: there are no navigation controls (Previous / Next

buttons and Slide navigation dots), and elements in the carousel do not receive focus in an order that follows the visual layout of the page.

48.    Additionally, assistive technology user was not aware of the search suggestions after search term was entered into the Search bar. The status update, such as a brief text message about search suggestions, was not provided even though the content of the page was updated and search suggestions were displayed. Without appropriate status message legally blind users do not know that search suggestion appeared on the screen.

49.    Finally, interactive elements that behave as "buttons" are not programmatically written correctly. Instead of using a "role" attribute, they are built by tags such as <span>, <div>, <a> or others. As a result, the assistive technology reads the incorrectly constructed element and the user is confused, because of receiving ambiguous information about the element in focus.

50.    These access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's website the same way sighted individuals do.

51.    Plaintiff intends to visit the Website in the near future if it is made accessible.

52.    Defendant has denied Plaintiff, along with other blind or visually-impaired users, access to Defendant's website, and to therefore specifically deny the goods and services that are offered to the general public. Due to Defendant's failure and refusal to remove access barriers to the website, Plaintiff and visually-impaired persons have been and are still being denied equal access to Defendant's Website, and the numerous goods and services and benefits offered to the public through the Website.

53.     Due to the inaccessibility of Defendant's Website, blind and visually-impaired customers such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, products, and services Defendant offers to the public on the Website. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from equal access to the Website.

54.     If the Website were equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do.

55.     Through Plaintiff's attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

56.     Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a.      Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff;

b.      Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually impaired individuals, including Plaintiff; and,

c.      Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

57.    Defendant therefore uses standards, criteria, or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

58.    The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

> In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . [w]here appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

59.    Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause the Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.1 guidelines for Defendant's Website. Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

a.    Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.1 guidelines;

b.    Regularly check the accessibility of the Website under the WCAG 2.1 guidelines;

c.    Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's Website complies under the WCAG 2.1 guidelines; and,

d.    Develop an accessibility policy that is clearly disclosed on Defendant's

Websites, with contact information for users to report accessibility-related problems.

60.    Although Defendant may currently have centralized policies regarding maintaining and operating the Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

61.    Defendant has, upon information and belief, invested substantial sums in developing and maintaining the Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of making Defendant's Website equally accessible to visually impaired customers.

62.    Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Website.

<u>CLASS ACTION ALLEGATIONS</u>

63.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

64.    Plaintiff, on behalf of himself and all others similarly situated, seeks to certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered, during the relevant statutory period.

65.    Common questions of law and fact exist amongst the Class, including:

a.    Whether Defendant's Website is a "public accommodation" under the ADA;

b.    Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

c.    Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the ADA; and

d.    Whether Defendant's Website denies the full and equal enjoyment of the products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL.

66.    Plaintiff's claims are typical of the Class. The Class, similarly to the Plaintiff, are severely visually impaired or otherwise blind, and claim that Defendant has violated the ADA or NYCHRL by failing to update or remove access barriers on the Website so either can be independently accessible to the Class.

67.    Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

68.    Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions

affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

69.     Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

FIRST CAUSE OF ACTION
VIOLATIONS OF THE ADA, 42 U.S.C. § 12182 *et seq.*

70.     Plaintiff, on behalf of himself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

71.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

72.     Defendant's Website is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The Website is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

73.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

74.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations,

which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

75.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

76.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

77.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

<u>SECOND CAUSE OF ACTION</u>
VIOLATIONS OF THE NYCHRL

78.    Plaintiff, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

79.    N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

80.    Defendant's Website is a sales establishment and public accommodations within the definition of N.Y.C. Admin. Code § 8-102(9).

81.    Defendant is subject to NYCHRL because it owns and operates the Website, making it a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

82.    Defendant is in violation of N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Website, causing the Website and the services integrated with such Website to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

83.    Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability not to provide a reasonable accommodation to enable a person with a disability to satisfy the essential requisites of a job or enjoy the

right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

84.     Defendant's actions constitute willful intentional discrimination against the Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

      a.     constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

      b.     constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

      c.     failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

85.     Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

86.     As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

87.     Defendant's actions were and are in violation of the NYCHRL and therefore Plaintiff invokes the right to injunctive relief to remedy the discrimination.

88.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

89.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

90.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

<p style="text-align:center">THIRD CAUSE OF ACTION<br>DECLARATORY RELIEF</p>

91.    Plaintiff, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

92.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

93.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know its respective rights and duties and act accordingly.

<p style="text-align:center">PRAYER FOR RELIEF</p>

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

a.    A preliminary and permanent injunction to prohibit Defendant from

violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York;

b.      A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.      A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq*., and the laws of New York

d.      An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.      Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law and City Law;

f.      Pre- and post-judgment interest;

g.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.      Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated:     Hackensack, New Jersey
           February 25, 2025

                                        STEIN SAKS, PLLC
                                        By: */s/ Rami Salim*
                                        Rami Salim, Esq.
                                        rsalim@steinsakslegal.com
                                        One University Plaza, Suite 620
                                        Hackensack, NJ 07601
                                        Tel: (201) 282-6500
                                        Fax: (201) 282-6501
                                        ATTORNEYS FOR PLAINTIFF